THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY TAYLOR, | ) | |
| et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 05-4173-CV-C-SOW |
| | ) | |
| LARRY CRAWFORD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE (DOC. NO. 37) TO DEFENDANTS' PROPOSED PROTECTIVE ORDER (DOC. NO. 32)

Plaintiffs, through discovery, have asked for the identities of persons involved in carrying out executions in Missouri and for information regarding the training, credentials, qualifications, and experience of these individuals. Defendants have objected to providing the identities of persons involved in carrying out executions in Missouri. Defendants have also objected to providing background information as to these persons without the protection of a protective order. Defendants have offered a proposed protective order. Plaintiffs now (in Doc. No. 37) ask that the court deny defendants' request for a protective order and for an order that defendants provide all information as to identities and background requested. It is unclear whether plaintiffs object to entry of a protective order of any kind.

Defendants object to providing the identities of persons involved in carrying out executions because the identities are not relevant and will not reasonably lead to the discovery of admissible evidence. The persons at issue are the doctor and the nurse who

- 1 -

prepare the drugs for administration, insert an IV central line, and monitor the EKG machine and the department of corrections personnel who administer the drugs.

The issue in this case is whether Missouri's method of execution is constitutional. The method is what it is, regardless of the identity of the persons who are implementing it.[1] As long as defendants can establish that the persons involved are generally qualified and able to perform their functions in a constitutionally adequate manner, the identities of the persons performing these functions are of no help to plaintiffs. It is immaterial whether it is John Doe or Jane Roe who performs the functions.

Plaintiffs claim it is necessary for them to be able to independently check the qualifications of the persons involved. Essentially, what it seems plaintiffs want to do is check whether professional discipline of any kind have been entered against the medical personnel involved, or whether legal claims of any kind have been made against them. There is, however, no relevant need to check on professional discipline or past legal actions. As long as the medical professional is currently authorized to practice his or her profession, and thereby to treat patients generally, he or she will also have the legal authority and ability to engage in medical activities that may be undertaken in an execution. Any argument of plaintiffs to the contrary would be the functional equivalent of an argument that no physician

_____

[1]When defendants refer to medical personnel being involved in executions or taking part in carrying out executions, they do not mean that the medical personnel are the ones that engage in the acts that cause the death of the condemned prisoner. Rather, medical personnel are involved to do what can be done to make executions as humane as possible. Plaintiffs' references to the medical personnel involved as "moonlight[ing] as an executioner" Doc. No. 37, at p. 8, as a "miscreant" Doc. No. 37, at p. 12, and as "us[ing] their professional skills to kill helpless men" Doc. No. 37, at p. 12, are inaccurate and unduly harsh.

or nurse who is disciplined or sued should be allowed to continue to practice their professions at all, even though they have not had their licenses rescinded.

Defendants have not even asserted a specific reason why they think the names of the Corrections personnel administering the drugs have any relevance, or likelihood of leading them to the discovery of admissible evidence. Identifying these persons, in fact, would not be of any material benefit to plaintiffs because the particular identity of any person taking the action that results in the injection of lethal drugs is not relevant to their constitutional claims. Rather, it is the fact of the administration of the drugs that is the basis of their constitutional claims.

Plaintiffs assertion that the identities are relevant because they have now added a claim that it is a direct violation of their rights that doctors have a role in the execution process is also of no avail. As explained in Defendants' Motion to dismiss, this claim fails to state a claim upon which relief can be granted.

Defendants further object to providing the identities of persons involved in carrying out executions because of the security interests of these persons and of the prison and because of the privacy interests of the persons involved. If the persons involved are identified, this could well lead to them being targeted for harassment or even physical retaliation by offenders, their families, their friends, or others opposed to the death penalty.

Plaintiffs cavalierly dismiss these safety concerns on the grounds that the death sentenced inmates may be kept under stringent control, have no friends, and have nonexistent family ties, and that death penalty opponents will more likely target the governor, judges, and

- 3 -

prosecutors than the persons directly involved in the execution process.

Contrary to plaintiffs' social theories and speculation, however, defendants have legitimate security and privacy concerns. The point that death sentenced inmates, and other inmates, can be perfectly controlled is belied by the actual occurrence of prison assaults and murders despite the security precautions of prison officers. The statement that death sentenced prisoners have no friends or family support is classic overstatement, erroneous as a general proposition, and also ignores friendships that may arise between inmates. The defendants' concern about actions that may be taken by death penalty opponents are fully justified by the acts of zealous proponents of causes the world over, including for example the violence offered to persons working in abortion clinics.

The real possibility that disclosure of the identities of persons directly involved in the execution process may result in harassment and possible physical retaliation may also cause trained medical staff and correctional staff to be hesitant, or to decline, to participate in the execution process. That will hamper the ability of the state of Missouri to find personnel to carry out state imposed, constitutionally authorized, and meticulously reviewed state death sentences.

The security interests of the persons involved in executions and of the prison, the privacy interests of the persons involved, and the consequent impact of the disclosure of the identities of persons involved in executions outweigh any speculative materiality this information will have to plaintiffs.

The identities of the persons involved in executions should not even be ordered

- 4 -

disclosed subject to a protective order. Contrary to plaintiffs' counsels' suggestion at the hearing on August 18, 2005, the concern is not that anyone will intentionally disregard a protective order, but that accidental disclosure might occur.[2]

Defendants have similar security and privacy objections to providing the requested information regarding training, credentials, qualifications, and experience of persons involved in executions in Missouri because such information could be used to identify the persons involved in the executions. But defendants do propose to provide this background information (with regard to the last four executions) subject to their proposed protective order. Plaintiffs have not challenged any of the terms of that proposed order.

Finally, plaintiffs do not appear to challenge, at this time anyway, defendants' objections to providing certain information beyond certain time limits. *See* Doc. No. 37, at. pp. 14-15. Even if they did, defendants' position that information relating to the personnel involved in executions should be restricted to the last four executions (five now that Timothy Johnston's execution has occurred) is merited. If the personnel have not been involved recently and there is no expectation that they will become involved again (as is the case here), then information relating to such personnel can have no bearing on plaintiffs' claims here.

---

[2]The passionate exposition of the position that medical personnel having a role in the execution process are committing gross ethical violations that would merit the extreme sanction of rescission of board certifications (Doc. No. 37, at p. 8) does cause defendants concern that identification of the medical personnel involved in executions in Missouri by plaintiffs' counsel to plaintiffs' medical experts could result in the experts feeling ethically obligated to report these personnel to the applicable licensing boards despite the existence of a protective order.

- 5 -

WHEREFORE, defendants Crawford and Purkett pray this court to enter their proposed protective order under which they have proposed to disclose training, credentials, qualifications, and experience information relating to the persons involved in carrying out executions in Missouri and to deny plaintiffs' request for an order directing them to disclose the identities of the persons involved in carrying out executions in Missouri.

Respectfully submitted,

JEREMIAH W. (JAY) NIXON
Attorney General

/s/ Michael Pritchett

MICHAEL PRITCHETT
Assistant Attorney General
Missouri Bar No. 33848

/s/ Steven Hawke

STEVEN HAWKE
Assistant Attorney General
Missouri Bar No. 35242

P. O. Box 899
Jefferson City, Missouri 65102
Telephone No. (573) 751-3321
Fax No. (573) 751-9456

ATTORNEYS FOR DEFENDANTS
CRAWFORD AND PURKETT

- 6 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

John W. Simon, Attorney at Law
2683 South Big Bend Boulevard, # 12
St. Louis, MO  63143-2100

Elizabeth Unger Carlyle, Attorney at Law
200 S.E. Douglas, Suite 200
Lee's Summit, MO  64063

Jennifer Herndon, Attorney at Law
33 Flower Valley, #188
St. Louis, MO  63033

_____/s/ Michael Pritchett_____
Assistant Attorney General